CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 0 9 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

**DR. MARK G. TURNER, DDS, PC**    )
            )
    Plaintiff,          )
            )
    v.              )      Civil Action No. ___4:16cv43___

**VIRGINIA DEPARTMENT OF MEDICAL**
**ASSISTANCE SERVICES ("DMAS"),** a
quasi-public and quasi-private agency under
the laws of the Commonwealth of Virginia,
serve: Cynthia B, Jones, Suite 1300, 500 East
Broad Street, Richmond, Virginia 23219
**DENTAQUEST, LLC,** a company and
contractor for DMAS, Registered Agent/
Registered Office: CORPORATION
SERVICE COMPANY, Bank of America
Center, 16th Floor, 1111 East Main Street,
Richmond, Virginia 23219,
**DR. DAVID BLACK, DDS,** in his individual
capacity as a competitor with dentists in
Virginia, serve at residence: 2490 Wolfe Run,
Vinton, Virginia 24179-1028
**BLUE RIDGE DENTAL GROUP,** is a
Virginia company located at 5049 C Valley
View Blvd., Roanoke, Virginia 24012,
**DR. TERRY DICKINSON, DDS,** in his
individual capacity as a competitor with
dentists in Virginia, and in his capacity as
executive director of the Virginia Dental
Association, serve at 3460 Mayland Ct., Suite
110, Henrico, Virginia 23233,
**VIRGINIA DENTAL ASSOCIATION,**
serve at: 3460 Mayland Ct., Suite 110,
Henrico, Virginia 23233,
**COMMONWEALTH DENTAL CLINIC,**
is a Virginia company located at 1121 S.
Jefferson St, Roanoke, Virginia 24016,
**DR. GREG HARVEY, DDS,** in his individual
capacity as a competitor with dentists in
Virginia, and in his capacity as owner of
Blue Ridge Dental Group of the New River
Valley, 4664 Lee Hwy, Dublin, Virginia 24084

| JOHN DOE NUMBER 1, | ) |
| JOHN DOE NUMBER 2, | ) |
| JOHN DOE NUMBER 3, | ) |
| JANE DOE NUMBER 1, | ) |
| JANE DOE NUMBER 2, and | ) |
| JANE DOE NUMBER 3. | |

        Defendants.

## COMPLAINT

### INJUNCTIVE RELIEF SOUGHT AND JURY TRIAL DEMANDED

Plaintiff Dr. Mark G. Turner, DDS ("Plaintiff" or "Dr. Turner"), by his undersigned attorney, alleges as follows, upon actual knowledge with respect to himself and his own acts, and upon information and belief as to all other matters:

### NATURE OF THE ACTION

1.      Plaintiff has been a General Dentist since 1982. Initially, Dr. Turner worked for eight (8) years as a dentist for the military including a General Practice Residency based at Fort Bragg, North Carolina. During the subsequent twenty-four (24) years, Dr. Turner has also been a dentist in private practice, including nine (9) years in Manakin-Sabot, Goochland in the Goochland, Virginia area, and since 2002 in the Roanoke, Virginia area.

2.      In 2007, Plaintiff entered into an agreement with Doral Dental USA, LLC, which was the predecessor of Defendant DentaQuest, LLC, to provide Medicaid approved dental services to individuals in the *Smiles For Children* program in the Over 21 division of that program.

3.      In January 2008, Plaintiff created a unique private practice model, treating adult Medicaid patients exclusively for exams, x-rays, extractions only, as these were the only services covered by Medicaid at the time. From early 2008 through most of the first quarter of 2014, Plaintiff Dr. Turner saw exclusively adults over age 21, and provided limited tooth extraction

2

services, and no continuing care dental services, to these individuals.

4. The federal government provided payments through its Medicaid program for certain dental services, including exams, x-rays, and extractions through its *Smiles For Children* program. This program had two different dynamics, including dental services for actual children under 21 years of age, and the "Over 21" or adult program. Plaintiff Dr. Turner worked exclusively with the Over 21 portion of the Medicaid's *Smiles For Children* program.

5. The federal government partners with the states to provide the Medicaid *Smiles For Children* program. Any states wishing to receive these federal Medicaid funds must agree to administer the programs within their boundaries, or contract out with a private entity to handle the administrative details of the specific Medicaid program.

6. The Virginia agency that oversees the Medicaid *Smiles For Children* program is the Virginia Department of Medical Assistance ("DMAS"). DMAS entered into a contract with Defendant DentaQuest, LLC whereby DentaQuest would handle most of the administration and supervision of the Medicaid *Smiles For Children* program in Virginia, and DentaQuest would coordinate its actions with DMAS.

7. Pursuant to the DMAS/DentaQuest relationship, DentaQuest, through its predecessor company Doral Dental USA, entered into the 2007 agreement between Plaintiff and Doral Dental USA, and later DentaQuest, to provide Medicaid approved dental services to individuals in the *Smiles For Children* program in the Over 21 division of that program.

8. Plaintiff participated exclusively with the Medicaid *Smiles For Children* program in the Over 21 category from January 2008 through the first quarter of 2014. Plaintiff's participation in this Medicaid *Smiles For Children* program from 2008 through the first quarter of 2014 resulted in his performing 26,215 tooth extractions, and his serving 6,100 patients.

3

9. Plaintiff's Medicaid production during this period from January 1, 2008 until March 8, 2014 was $2,887,140.00.

10. Plaintiff's solo dental practice during this time period was likely the largest safety net adult Medicaid practice in Virginia. From 2008 until 2012, Plaintiff's solo dental practice was generating a substantial amount of the entire Smiles for Children Over 21 Network production in the Commonwealth of Virginia. At the time of termination, Dr. Turner was treating at least 75% of the eligible Medicaid adults receiving treatment in the Roanoke Valley. Dr. Turner's adult Medicaid funded practice drew patients from a two (2) hour driving radius around Roanoke, Virginia, covering the entire Western half of Virginia.

11. Plaintiff's annual oral surgery production from his solo dental practice exceeded all the local free clinics and the Roanoke Mission of Mercy clinic combined. During this time, Dr. Turner was the only private provider accepting Over 21 Medicaid patients in his Western Virginia service area.

12. Competition among service-providers is good for the customer because the suppliers must improve their service to persuade consumers to select them over the supplier's competitor. Indeed, the U.S. Supreme Court has explained that "[t]he heart of our national economy has long been faith in the value of competition."[1]

13. The Mission of Mercy Clinic ("MOM") was a free, volunteer traveling dental clinic in the Roanoke area that was founded by Terry Dickerson, Executive Director of the Virginia Dental Association and the Virginia Dental Association Foundation. The concept has spread across the nation. The Roanoke MOM was supported by local nonprofit coalitions. The MOM program had a significant negative impact on Plaintiff Dr. Turner's practice over the past

---

[1] *National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

6 years, because he was competing against volunteer dentists who were treating oral surgery patients who had a 100% Medicaid benefit. The goal of the MOM organizers was to "arise awareness", including diminishing the Over 21 benefit, to get funding for their nonprofit dental initiatives. In 2008, Dr. Turner was told by Mission of Mercy organizer, Pat Young, that the Over 21 services he was performing was a "threat to their funding."

14.     Roanoke MOM recently downsized to a Mini-Mom concept. This downsizing was done for one of three reasons, including (1) to target indigent patients to local volunteer dental offices; (2) to refer Dr. Turner's Medicaid patient base to Defendant Commonwealth Dental; and (3) to refer all other types of dental patients to New Horizons (FQHC). Mini-Mom was fully endorsed by the VDA. MOM was heavily endorsed by VDA, Virginia Healthcare Foundation, Virginia Oral Health Coalition, Carillion, and DentaQuest. The MOM is a project of the Virginia Dental Association, organized as the VDA's charitable foundation, Virginia Dental Association Foundation.

15.     The entrenched providers can take one of two paths when facing a new competitive threat. The first path is to compete better: the service-provider might reduce prices, improve services, or sometimes even change their entire approach to better keep and attract customers. Complacency is the enemy of this path. This first path represents the foundation of our economic system and collectively improves our lives every day.

16.     The second path focuses on the competitor instead of competition: the service-provider attacks the new competitors and finds some way to keep them from effectively competing for customers. From the psychological perspective of the entrenched provider, it is understandable. They are used to a way of life and do not want to change. Moreover, after years of following and living an approach, it is not uncommon that these entrenched providers—

themselves feeling threatened—might reflexively attack their competitors rather than looking in the mirror and improving their own business.

17.    This second path is well traveled and is one of the reasons we have the federal antitrust laws, which embody "fundamental national values of free enterprise and economic competition."[2] The entrenched provider that eliminates its competitor from its market harms competition, and therefore consumers. The federal antitrust laws protect competition by creating a cause of action for competitors that are harmed through anticompetitive conduct—often exercised on this second path.

18.    The Plaintiff seeks antitrust relief because the dentists in the Roanoke and Western Virginia areas ("Defendants") joined together to keep Plaintiff, a sole dental practitioner, from competing against them and, ultimately, to put Dr. Turner out of business in the Medicaid *Smiles For Children* program. Recognizing the increasing competitive threat of Dr. Turner to their dental practices and profits, these dentists travelled down the second path—by exercising their market power to push Plaintiff out of his dental market niche, and out of business. Defendants took this anticompetitive action against Dr. Turner because, with Plaintiff's established market share, Defendant Commonwealth Dental's business model would likely be unsustainable with ANY competition from Dr. Turner's practice.

19.    This is a case by a solitary dentist against numerous strategically placed dentists, or dental advocates, who are very powerful both in and out of the Western Virginia dental community. Dr. Turner stands alone on the caption, but brings this case—not only to vindicate his own rights and competitive injuries—but to stand up for the many other dentists that are bullied, abused and manipulated by these powerful dentists and dental advocates.

---

[2]    *Federal Trade Comm'n v. Phoebe Putney Health Sys., Inc.*, 133 S.Ct. 1003, 1010 (2013).

## THE PARTIES

20. Plaintiff Dr. Mark G; Turner, DDS is a citizen of the United States and was a resident of the Roanoke area in the Commonwealth of Virginia where, from the beginning of 2008 until 2014, he used to practice dentistry, including 26,215 tooth extractions, serving 6,100 patients. Plaintiff's solo practice was likely the largest safety net adult Medicaid practice in Virginia. From 2008 and subsequent years, this solo practice was generating a substantial amount of the entire *Smiles For Children* Over 21 Network production in the Western half of the Commonwealth of Virginia. Plaintiff's practice drew patients from a two (2) hour driving radius around Roanoke, Virginia, and covered the entire Western half of Virginia.

21. Defendant, DentaQuest, LLC is headquartered at 12121 North Corporate Parkway, Mequon, Wisconsin 53092 ("Defendant DentaQuest" or "DentaQuest"). Defendant DentaQuest has acted as the third party administrator for *The Smiles for Children Program.* In completing its duties and responsibilities for the *Smiles for Children Program,* Defendant DentaQuest did not act independently, and took its orders for administration of *The Smiles for Children Program* in Virginia from Defendant DMAS. Defendant, DentaQuest allegedly terminated Plaintiff's eligibility for *The Smiles for Children Program* from its headquarters located outside of Mequon, Wisconsin. On information and belief, Defendant DentaQuest wanted to terminate Plaintiff's private practice and back what it thought was going to be a nonprofit government backed clinic, Commonwealth Dental. Apparently, Commonwealth Dental had been able to early on convince others that it was a community, non-profit operation.

22. The Virginia Department of Medical Assistance ("DMAS" or "Defendant DMAS") is a quasi-public and quasi-private agency established under the laws of the Commonwealth of Virginia, charged with regulating the practice of Medicaid programs in the

7

State of Virginia. It has its official address at 9960 Mayland Drive, Suite 300, Henrico, Virginia 23233. Representatives of DMAS gave DentaQuest the order to terminate Plaintiff Dr. Turner from the Medicaid sponsored *Smiles for Children Program* that he had been operating with since 2007.

23.     Defendant Terry Dickinson ("Defendant Dickinson" or "Dickinson") has been the Executive Director of the Virginia Dental Association for approximately fifteen (15) years. In that capacity, Defendant Dickinson has promoted the Virginia Dental Association Foundation ("VDAF") and become instrumental in influencing and controlling dental policies and practices, both privately and on a governmental level, throughout the Commonwealth of Virginia during that time period.

24.     Defendant Virginia Dental Association ("Defendant VDA") is a non-profit organization of dentists committed to enhancing the professional lives of its member dentists, and is located at 3460 Mayland Ct., Suite 110, Henrico, Virginia 23233. For purposes of this action, Defendant VDA, and its nonprofit Virginia Dental Association Foundation ("VDAF"), have acted as a vehicle of Defendant Terry Dickinson. Defendant VDA has been documented as a supporter of the Roanoke MOM, and subsequent Mini Mom project. By supporting the Roanoke Mini Mom Project, VDA has also been knowledgeable of the role Defendant Commonwealth Dental has played in its formation. Defendant VDA is suspected to have been a backer of Defendant Commonwealth Dental because of Defendant David Black's VDA ties. The VDA has wanted to prevent Dr. Turner's model from continuing to be an economic threat to its charitable Mission of Mercy on a statewide level. The VDA wants to diminish Dr. Turner's ability to promote his private practice model to policymakers in Richmond. The VDA Foundation staff has been associated with Commonwealth Dental's Grand Opening.

25. Defendant VDA has not supported the Over 21 Benefit in the past, and does not mention it as a resource on their web site. VDA policy during the past few years has been to support the under 21 benefit, and only support the Over 21 benefit if it does not affect funding for under 21. The VDA refused to acknowledge the Over 21 Benefit as a resource in their response to the 2013 Joint Health Commission Study on "Untreated Dental Disease". However, more recently, Defendant VDA was in full support of Defendant CDC operating as a "community clinic".

26. The success of Plaintiff Dr. Turner's practice model was a threat to the VDA's Foundation, as one of its main programs was the Mission of Mercy (MOM) Program.

27. Defendant VDA prides itself as the first line resource of handling professional dental issues in Virginia. Defendant VDA was asked by Dr. Turner to help resolve ethical issues with David Black and Commonwealth Dental. The VDA Ethics Committee likely did not conduct a review of Dr. Turner's Ethics Complaint, as, if they did, David Black would have been found blatantly guilty based on the facts. On information and belief, the VDA has tried to protect Defendant David Black from ethics charges, and Defendant Terry Dickinson could be guilty of ethics violations by interfering with the ethics process. Defendant Terry Dickinson could have administratively ended Plaintiff's complaint to the VDA Ethics Committee by preventing the complaint from reaching any sub-committee. To date, Defendant VDA has refused to give Plaintiff, who is a VDA member, requested copies of findings of the Ethics Committee and Ethics Sub Committee concerning his case. No member of any VDA Ethics Committee has ever contacted Plaintiff Dr. Turner with any follow up questions. Officially the VDA merely closed Plaintiff's ethics complaint, and offered no recourse of advice on pursuing further resolution. The VDA Ethics Committee could have referred Plaintiff's complaint to the

9

Board of Dentistry, or advised him to seek legal counsel. They did neither.

28.     Defendant Dr. David Black, DDS, who presently resides at 2490 Wolfe Run, Vinton, Virginia 24179-1028 ("Defendant Dr. Black and "Dr. Black"). Defendant Dr. Black has been a dentist in the Roanoke, Virginia area for over forty (40) years, and he is the Founder and Dental Director of the Roanoke Mission of Mercy Clinic ("MOM") Project, a member of the Virginia Dental Association ("VDA") Board of Directors, Healthy Roanoke Valley, Coalition of Roanoke Community Based Health Coalitions, and he has had a financial relationship with Blue Ridge Dental Group. A few years ago, Dr. Black sold his practice to Blue Ridge Dental Group, which directed Medicaid business to the people whom he had a financial relationship. Defendant Dr. Black became a Blue Ridge Dental independent contractor, and Medicaid provider for CDC after the sale of his practice to Blue Ridge Dental Group.

29.     Defendant Dr. Black also has been the director of the new mini MOM project, which is endorsed by the VDA. Defendant Dr. Black is a director of the VDA Project Access, who sponsors the Mini Mom project, and he is a confidant of Terry Dickerson.

30.     Defendant Blue Ridge Dental Group ("Defendant Blue Ridge Dental Group" or "Defendant BRDG") is a Virginia company located at 5049 C Valley View Blvd., Roanoke, Virginia 24012, and also known as Blue Ridge Dental Group of the New River Valley, located at 4664 Lee Hwy, Dublin, Virginia 24084. On information and belief, Defendant Dr. Greg Harvey, DDS purchased the dental practice of Defendant David Black, merging it into Defendant Blue Ridge Dental Group within the past 3-5 years. David Black has had financial ties to Blue Ridge Dental and, on information and belief, he has been compensated for has financial ties to Blue Ridge Dental during the past several years. Defendant Dr. Black has been the main spokesman for Blue Ridge Dental Group, and is also on the Project Access Board of Directors. Black and

others closed down their charitable MOM clinic and funneled the Over 21 Medicaid patients that they had been seeing, or planned to see, to his financial partners. All of the dentists who work for Commonwealth Dental, are Blue Ridge Dental employees. Blue Ridge Dental group does not accept Medicaid, and essentially discriminates against Medicaid patients coming to their Blue Ridge Group offices, and now forwards them to Commonwealth Dental Clinic (CDC).

31.    Defendant Commonwealth Dental Clinic ("CDC" and "Defendant CDC") is a Virginia company located at 1121 S Jefferson St, Roanoke, Virginia 24016. CDC was created by Defendant Dr. Greg Harvey, DDS just before Plaintiff was terminated "without cause" by Defendant DentaQuest. On information and belief, Defendant Dr. Greg Harvey, DDS purchased Defendant Blue Ridge from Defendant Dr. Black, and then Defendant CDC obtained all of the endorsements from all the local non-profits that make up the Community Health Coalition for the greater Roanoke area, including Healthy Roanoke Valley ("HRV"). Defendant David Black was a member of HRV's oral health action team. Defendant CDC's Facebook page states they are a community asset, not just a private practice. CDC's name was on a Virginia Health Care Foundation (VHCF) web site early as a non-profit, and the current CDC may have been accepted by DentaQuest because it believed that Defendant CDC was going to be a non-profit, especially given the somewhat misleading name of Defendant CDC which implied that it was a nonprofit government backed clinic. On information and belief, Defendant Commonwealth Dental has been able to convince a number of individuals and entities that it was a community, non-profit operation. Gary Helton, Commonwealth Dental's office manager, was a major organizer for the Roanoke Mission of Mercy.

32.    Owners and employees of Defendant Commonwealth Dental were also the primary organizers of The Roanoke Mission of Mercy Clinic, which had been seeing the same

11

Medicaid patients for free.

33.     The organizers of the Roanoke Mission of Mercy (MOM), David Black and other nonprofit leaders decided to end their Roanoke MOM.  Defendants David Black and Greg Harvey, with the support of local non-profits, decided to form Defendant Commonwealth Dental Clinic to treat Over 21 Medicaid patients, seeing these Medicaid patients for revenue.  This decision was made *with the knowledge* that one of their main competitors (Dr. Mark Turner) would be eliminated, so these Defendants and others went into business after they eliminated their competition: their own charity and the only existing local provider, Dr. Turner.

34.     The Individual Defendants are named in their individual capacity because each of them are actual and potential competitors with each other and actual and potential competitors with Plaintiff.  Thus, each of them and Plaintiff either have, or have had, a directly competitive relationship with Plaintiff, or they are heavily invested into organizations or practices that competed, or would otherwise compete, against Dr. Turner.  This competitive relationship is sometimes separate and apart from Individual Defendants' role as members of government or private entities that monitor and control dentists in the Commonwealth of Virginia.  The Individual Defendants and the other Defendants will be referred to collectively as "Defendants."


## JURISDICTION AND VENUE

35.     This is an action to recover treble damages and injunctive relief for injuries resulting from Defendants' violations of the antitrust laws of the United States.  The Court has primary jurisdiction over this action pursuant to Title 15 of the United States Code, 28 U.S.C. §§ 1331 and 1337(a), and Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

36.     This Court has supplemental jurisdiction over all State of Virginia causes of action pursuant to 28 U.S.C. § 1367.

37.     All relevant acts constituting the antitrust and state law violations alleged in this action occurred within the judicial district of this court, so that venue is proper in the Western District of Virginia under the provisions of 28 U.S.C. § 1391(b), as well 15 U.S.C. §§ 15 & 22.

38.     Defendant DMAS is subject to personal jurisdiction in Virginia because its official address is in Virginia, and Defendant DentaQuest is subject to personal jurisdiction in Virginia because it does business throughout Virginia as an agent and contractor of Defendant DMAS. Defendants VDA, Blue Ridge Dental, and Commonwealth Dental Clinic are all based in Virginia and do business throughout parts of Virginia. All individuals are subject to personal jurisdiction in Virginia because they reside in Virginia, work in Virginia, and are either directly or indirectly involved in providing dental services, or support services, in Virginia.

## SUBSTANTIVE ALLEGATIONS

**I.     BACKGROUND OF RELEVANT MARKETFOR SERVICES**

39.     During the past several years, the Mission of Mercy Clinic was set up in the Roanoke area. The Mission of Mercy Clinic ("MOM") was a free, volunteer traveling dental clinic that was founded by Defendant Terry Dickerson, the Executive Director of VDA. The Roanoke MOM was supported by local nonprofit coalitions. Significant numbers of patients were seen by the MOM clinic, usually on an annual basis, and these patients were also eligible for the Over 21 Medicaid dental benefit. For many years, the VDA, Roanoke newspapers, television stations, Carillion, and other Roanoke area organizations totally denied the Over 21 Medicaid benefit was a patient resource.

13

40.     The MOM project had a significant negative impact on Plaintiff Dr. Turner's practice over the past 6 years that he provided dental services in the Roanoke area, as he had to compete against volunteer dentists treating oral surgery patients who had the Medicaid extraction benefit. One goal of the MOM organizers was to "raise awareness" to get funding for their nonprofits. However, it appears that the Roanoke MOMs recently decided to end its annual clinic. The MOM organizers publicly admitted that their model no longer made any financial sense. Dr. Turner's 6 years of treating 6,100 patients, performing 26,250 extractions certainly reduced the backlog demand for these services. Dr. Turner's efforts were certainly a contributing factor with the Roanoke Mission of Mercy going out of business.

41.     The Roanoke MOM organizers collectively devised an exit strategy to address their past commitments to the community. Project Access would take over administrating the Mini-Mom, and Defendant CDC would treat all the Over 21 Medicaid extractions. All other potential patients without the Medicaid benefit would be funneled to the Mini-Mom Clinics for services. On information and belief, the HRV (Healthy Roanoke Valley) with its Oral Health Action Team would have been decisive in this plan, of which Defendant David Black was a member and leader of this Oral Health Action Team.

42.     During the past two years, MOM decided to end its annual clinic. On information and belief, MOM's exit strategy from expected obligation to the community was to partner with Project Access to have a new plan, where the previous MOM supporters would conduct a series of mini-MOMs combined with treating eligible Medicaid patients (whom they had solicited for FREE care over the past 5 years) by directing the Medicaid patients to Defendant CDC's practice. Roanoke MOM recently downsized to a Mini Mom concept in order to: (1) target indigent patients to local volunteer dental offices, (2) refer Plaintiff Dr. Turner's Medicaid

14

patient base to Commonwealth Dental, and, later, (3) refer all other types of Over 21 Medicaid patients the planned New Horizons (FQHC). The Mini-MOM program was fully endorsed by the VDA.

43.     Defendant DentaQuest was *The Smiles for Children Program's* third party administrator for the State of Virginia and worked closely with Defendant DMAS. Although Defendant DentaQuest had the contract with Plaintiff, and terminated Dr. Turner "without cause" in January 2014, DentaQuest did not act independently. The termination order came from outside of the Mequon, Wisconsin (headquarters), and had been requested by representatives of DMAS at least as early as January 2013.

44.     While it is not clear why representatives of Defendant DMAS may have sought the Plaintiff's termination, it is clear that Defendant Terry Dickerson was involved in the termination decision and that he was regularly advised on the progress of that decision by DMAS representatives.

45.     On information and belief, Defendant Dickerson communicated with Defendant David Black on the progress of Defendant DentaQuest's terminating Plaintiff Dr. Turner from *The Smiles For Children* Over 21 Medicaid program. The reason for these communications was to assist Defendant Dr. Black in coordinating the development of alternative competitors, such as Defendant CDC, to take over Plaintiff Dr. Turner's dental practice as quickly as possible.

46.     Defendant Dr. Black, and others, have closed down their charitable MOM clinic and funneled their Over 21 Medicaid patients to Dr. Black's financial partners, Blue Ridge Dental Group, whose owner, Defendant Greg Harvey, owns Defendant CDC.

47.     The financial incentives that the Individual Defendants have to limit Plaintiff's Medicaid practice and take over the profits that he had been realizing have made them biased to

15

have control and power over the Plaintiff's dental practice. That is, the Individual Defendants have an economic conflict of interest in making determinations that affect the extent of competition for Over 21 Medicaid patients in Western Virginia.

II. **THE VIRGINIA DEPARTMENT OF MEDICAL ASSISTANCE SERVICES ("DMAS") AND DENTAQUEST, LLC ACTED WITH THE INDIVIDUAL DEFENDANTS IN THIS CASE TO TAKE AWAY PLAINTIFF'S MEDICAID BASED DENTAL PRACTICE**

48. Plaintiff, a Doctor of Dentistry, is licensed to practice dentistry in the Commonwealth of Virginia since 1984. Plaintiff holds Virginia license (#0401006328), Plaintiff's license was continuously active since the date it became effective. Plaintiff is also admitted to practice dentistry in the state of North Carolina, effective February 6, 2015, the state of Alaska, effective December 7, 2015, and the state of Maine, effective February 12, 2016.

49. The Commonwealth of Virginia has not evinced an intention in any way to exclude competition in the provision of healthcare within the state in favor of a particular branch of the healing profession.

50. The Commonwealth of Virginia has not evinced an intention in any way to exclude competition in the provision of healthcare, or dentistry, within any geographic part of the state in favor of another geographic portion of Virginia.

51. The Commonwealth of Virginia has also not evinced any intent to allow competing dentists to limit the practices of other Virginia dentists competing in the Medicaid approved *Smiles For Children* program.

III. **THE RELEVANT PRODUCT AND GEOGRAPHIC MARKETS AND MARKET POWER**

47. The relevant service markets for purposes of this action are (1) adult (over 21) dental services recognized under the Medicaid approved *Smiles For Children* program; (2) tooth extractions and related services, as identified under the Medicaid approved Over 21 *Smiles For*

16

*Children* program; and (3) Medicaid approved services for the Over 21 members of the *Smiles For Children* program in Western Virginia, and within a two hour drive of Roanoke. Virginia (collectively, with the relevant geographic market, the "relevant service markets").

48.     The relevant geographic market for the relevant service markets is the greater Roanoke area and western parts of the Commonwealth of Virginia.  Competing dental service providers must be licensed in Virginia to practice in Virginia.  The vast majority of patients do not travel out-of-state for each of the relevant service markets, and would not travel out-of-state in reaction to a sustained price increase.  Also, patients generally pay minimal fees if any if they are treated under the Medicaid approved Over 21 *Smiles For Children* program.

49.     The Virginia Department of Medical Assistance Services ("DMAS"), DentaQuest. and the Individual Defendants have exercised the power to exclude dentists from competing in the relevant service markets.  These Defendants have the power and perceived power to suspend provider contracts, issue fines, and order dentists and others to take or refrain from certain conduct.  Thus, the Defendants in this case have the power, which they have exercised here, to exclude competition within the relevant service markets.

## IV.    DMAS AND THE INDIVIDUAL DEFENDANTS ENGAGED IN ANTICOMPETITIVE CONDUCT

50.     Defendants DMAS, DentaQuest and the Individual Defendants have colluded to exclude Plaintiff from competing with other dentists in the relevant service markets.  These actions reduce the supply of services, and reduce consumer choice in the relevant service markets without any legitimate justification, defense, or efficiencies.  They also reduce the overall quality of services that customers receive from dental care providers in Western Virginia.

17

51.     For example, Defendants conspired to forbid and deter Plaintiff from providing dental services under the *Smiles For Children* Medicaid program targeted for the Over 21 Virginians who were eligible for the program.

52.     The Defendants interfered with Plaintiff's contracts, prospective contracts, and prospective business opportunities by violating Directors' Policies in posting the sanction against Plaintiff before Plaintiff's time to appeal had expired, and in failing to include notice that Plaintiff had appealed the decision. DentaQuest sent notices to all of Dr. Turner's Medicaid patients on Feb. 10, 2014, not even allowing him until the Feb. 24, 2014 deadline that he had to appeal the first level termination decision. Defendants' communication harmed competition itself, not only by harming a significant competitor, but by deterring other dentists from competing with the dentists and their businesses who had immediately moved into Plaintiff's market and started servicing Plaintiff's market area. Defendants' communication also unlawfully interfered with Plaintiffs' contracts, prospective contracts, and prospective economic advantage.

53.     The Defendants denied Plaintiff Dr. Turner his due process rights.  Defendants did not provide Dr. Turner with a basis for his termination from the Medicaid approved Over 21 *Smiles For Children* program, and Defendants did not treat Dr. Turner fairly.  Defendants, along with currently unknown John Doe and Jane Doe Defendants, took these actions because they intentionally wanted to remove Plaintiff Dr. Turner as a competitor in the relevant market.

54.     The Defendants additionally interfered with Plaintiff and other dentists' ability to compete in the relevant markets by advising third-parties not to do business with Plaintiff.

V.    **ANTITRUST INJURY**

55.     Without effective relief, the exclusionary conduct by the Defendants continues. As a result of the Defendants' conduct, the availability of relevant dental services for consumers in the relevant service markets has been and will be significantly diminished.  Defendants'

conduct will have the intended effect of deterring and prohibiting other dentists from offering relevant dental services in the relevant service markets. As a result of this diminished competition, consumers will less supply of the relevant services markets, and have fewer dental provider choices. They will also receive lower-quality care. By eliminating Dr. Turner as a competitor, CDC becomes the only niche practice serving adult Medicaid patients in the Roanoke Valley, and it now holds a monopoly for these services. CDC and the other Defendants will be able to continue their monopoly for the relevant services in Western Virginia by using their influence and long term connections with Defendants DentaQuest, DMAS and other government and regulatory entities.

56.     Ultimately, by foreclosing competition, Defendants' conduct increases prices and reduces the quality and quantity of options for consumers in the relevant service markets.

57.     The providers of Defendant Blue Ridge Dental Group have become the ONLY providers for Adult (Over 21) Medicaid dental services in Western Virginia starting in 2014. On information and belief, Defendants Blue Ridge Dental and/or CDC are getting compensated from Defendant VDA for being the primary volunteers for the Roanoke Mini MOM.

58.     Defendants' exclusionary conduct directly harmed Plaintiff by foreclosing and precluding Plaintiff from competing with other dentists in the relevant service markets. Plaintiff has sustained and will continue to sustain significant economic and financial loss from Defendants' anticompetitive conduct. First, he is unable and will continue to be unable to treat customers within the relevant service markets. Second, the Defendants caused Plaintiff's dental license to effectively be suspended for at least twelve months, during which time he was unable to treat any Medicaid dental patients in the Commonwealth of Virginia. Third, Defendants' actions caused Plaintiff (1) to lose the market value of his dental practice, (2) the loss of a

substantial practice income, (3) the loss of his livelihood, (4) restrictions of being a Medicaid provider in Virginia for 12 months (since he only had a Virginia license at that time), (5) damage to Plaintiff's reputation, and (6) the legal expenses of audits and two appeals. Finally, Defendants' actions severely limiting Plaintiff's other job opportunities, and resulted in the additional costs and expenses of obtaining other dental licenses and credentials, relocation expenses, having to go above the Arctic Circle to find a dental job not requiring a state license, losing a $138,000.00 job at Rockbridge Area Health Center in Lexington, Virginia in September 2015, due to being denied credentials to be a Medicaid provider, the $6,000 cost of relocating to Lexington, Virginia. These injuries to Plaintiff result from the anticompetitive nature of Defendants' conduct in excluding Plaintiff from the relevant market in Western Virginia, and eliminating Plaintiff's lawful competition with dentists in the relevant market area.

59.     The severity of Defendants' conduct also chills possible future competition for dentists within the relevant service markets. Indeed, the Defendants intentionally sought to make an example of Plaintiff to deter other dentists from competing with the Individual Defendants and their companies in Virginia. Absent an order from this Court, both Plaintiff and competition in the relevant service markets will continue to suffer harm arising out of Defendants' anticompetitive conduct.

VI.     **STATE ACTION IMMUNITY**

60.     The Defendant Virginia Department of Medical Assistance ("DMAS") is not a sovereign-state entity within the federal system, but instead is a quasi-public, quasi-private entity that is made up primarily of individuals who have a significant impact on competition for dental services in Virginia. These staff members of DMAS make decisions that affect the dental service markets throughout Virginia, including participants or potential participants in the relevant markets.

61.     Defendants may not invoke state-action immunity for its anticompetitive conduct because the conduct was not clearly articulated and affirmatively expressed as state policy, and is not actively supervised by the Commonwealth of Virginia.  To the contrary, Defendants' conduct contravenes Virginia law.  Neither the Commonwealth of Virginia, nor its laws, contemplate that the Defendants could or would eliminate competition for these and other dentists.  Defendants' conduct cannot be attributed to the sovereign state, as it appears to have been done with the motive of benefitting the pecuniary interests of the Individual Defendants and their businesses. The Individual Defendants are market participants that compete with Plaintiff and have economic incentives and interests in taking over Plaintiff's clients in the relevant area.

**CLAIMS FOR RELIEF**

**Count 1**
**Violation of Section 1 of the Sherman Act**
**(All Defendants)**

62.     Plaintiff incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 61.

63.     Defendants' conduct violates Section 1 of the Sherman Act, 15 U.S.C. § 1, because DMAS, along with Individual Defendants, entered an agreement to allocate the entire relevant service markets, including the number of dental patients located in Western Virginia, and excluded and foreclosed dentists, including Plaintiff, from competing in those markets.  The agreement and conspiracy included Defendants' decision to terminate Plaintiff in a letter sent by DentaQuest on January 30, 2014.

64.     Defendants' conduct is a *per se* violation of Section 1 of the Sherman Act because it involves a horizontal agreement among competitors to allocate markets and exclude

21

competitors, including Plaintiff, from the relevant service markets.

65.     In the alternative, Defendants' conduct violates Section 1 of the Sherman Act under the rule of reason, or quick-look analysis.

66.     Defendants have sufficient market and monopoly power over the relevant service markets to appreciably restraint free competition in these markets.

67.     Defendants' conduct and agreements harm competition in the relevant service markets by excluding dentists, including Plaintiff, from competing within them.  Moreover, Defendants' conduct and agreements discourage all dentists from competing within those markets.

68.     Defendants also engaged in a group boycott against Plaintiff.  Defendants and Plaintiff are all horizontal competitors in the relevant dental markets.  As part of defendants' agreement and conspiracy, defendants communicated with third parties that do business with Plaintiff or might do business with Plaintiff, and convinced them not to do business with Plaintiff. Defendants' conduct harmed Plaintiff because Plaintiff's inability to do business in the *Smiles For Children* Medicaid markets, for example, make it impossible to compete with defendants in the relevant markets.

69.     Defendants' conduct and agreements have and will, as a result, increase prices and decrease the quality and quantity of services in the relevant service markets.

70.     As a result of Defendants' anticompetitive conduct, Plaintiff has been and will continue to be injured through significant economic and financial loss, the loss of current and future business, reputational damage, and the inability or difficulty to seek reimbursement through third-party insurers.  Thus, Plaintiff has suffered antitrust injury from Defendants' anticompetitive conduct, which has harmed both competition and Plaintiff.

22

71.     Defendants' conduct and agreements was intended to and did substantially harm and affect a substantial amount of interstate commerce.

72.     Defendants' conduct and agreements do not qualify for state action immunity, nor are they reasonably related to any efficiencies or other benefits sufficient to justify their harmful effects on competition in the relevant service markets.  The anticompetitive harm from Defendants' conduct and agreements substantially outweigh the non-existent efficiency and competitive benefits.

73.     Plaintiff is entitled to recover treble damages under Section 4 of the Clayton Act; 15 U.S.C. § 15, and to injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26.

**Count 2**
**Violation of Intentional Interference with**
**Existing Contracts under Virginia State Law**
**(Individual Defendants)**

74.     Plaintiff incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 73.

75.     Plaintiff has, or had, a valid contractual relationship or business expectancy with her clients, with insurance companies, with third-party testing companies, and with government agencies or programs, such as Medicare, all with a probability of future economic benefit to Plaintiff.

76.     The Individual Defendants are competitors and potential competitors of Plaintiff in the relevant markets, and knew and continue to know of the existence of Plaintiff's valid business relationships and expectancies.

77.     The Individual Defendants intentionally interfered with Plaintiff's existing contracts, thereby inducing or causing a breach or termination of the relationship or expectancy.

23

Defendants interfered in numerous ways, including anticompetitive conduct and improper communication with third-parties.

78. The Individual Defendants' actions against Plaintiff were not legal and have damaged Plaintiff and disrupted her relationship or expectancy with existing contracts.

79. The Individual Defendants' actions were and are without privilege or justification and were engaged in through improper means.

80. It is reasonably certain that, absent the Individual Defendants' intentional misconduct, Plaintiff would have continued in his contracts or realized her expectancy of future economic benefit.

81. As a result of the Individual Defendants' conduct, Plaintiff's goodwill with his clients has been diminished, and the Individual Defendants have diverted—and will divert—future business to the Individual Defendants and other dentists that would have gone to Plaintiff.

82. The foregoing conduct by the Individual Defendants constitutes intentional interference with Plaintiff's contracts, and a disruption of Plaintiff's relationship or expectancy, under Virginia common law.

83 As a consequence of the foregoing, Plaintiff has been and continues to be damaged by the actions of the Individual Defendants, and Plaintiff seeks damages and injunctive relief against the Individual Defendants.

**Count 3**
**Violation of Intentional Interference with**
**Prospective Contracts under Virginia State Law**
**(Individual Defendants)**

84. Plaintiff incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 83.

85.     Plaintiff has the expectancy of prospective contracts with his existing and future clients, with insurance companies, with third-party testing companies, and with government agencies or programs, such as Medicaid, all with a probability of future economic benefit to Plaintiff.

86.     The Individual Defendants are competitors and potential competitors of Plaintiff in the relevant markets, and knew and continue to know of the existence of Plaintiff's prospective contracts.

87.     The Individual Defendants intentionally interfered with Plaintiff's existing expectancy of prospective contracts, and have used improper, sometimes illegal, means or methods to interfere with Plaintiff's expectancy of prospective contracts.  Defendants interfered in numerous ways, including anticompetitive conduct, improper communication with third-parties with prospective contracts with Plaintiff.

88.     The Individual Defendants' actions against Plaintiff were not legal and have damaged Plaintiff and disrupted his relationship or expectancy of contracts.

89.     The Individual Defendants' actions were and are without privilege or justification and were engaged in through improper means.

90.     It is reasonably certain that, absent the Individual Defendants' intentional misconduct, Plaintiff would have realized her expectancy of future economic benefit.

91.     As a result of the Individual Defendants' conduct, Plaintiff has been and continues to be damaged by the disruption of his contract expectancy.

92.     The foregoing conduct by the Individual Defendants constitutes intentional interference with Plaintiff's prospective contracts under Virginia common law.

93.     As a consequence of the foregoing, Plaintiff has been and continues to be

damaged by the Individual Defendants' actions, and Plaintiff seeks damages and injunctive relief against the Individual Defendants.

### Count 4
### Violation of Intentional Interference with
### Prospective Economic Advantage under Virginia State Law
### (Individual Defendants)

94.     Plaintiff incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 93.

95.     Plaintiff has developed a successful business that has had business relationships or expectancies with a probability of future economic benefit to Plaintiff.

96.     The Individual Defendants are competitors and potential competitors of Plaintiff in the relevant markets, and they had knowledge of Plaintiff's business relationships or expectancies, including the nature of his dental practice.

97.     The Individual Defendants intentionally interfered with Plaintiff's prospective business or caused the breach or termination of the relationship or expectancy. Indeed, the Individual Defendants have used improper, sometimes illegal, means or methods to interfere with Plaintiff's expectancy and relationships. Defendants interfered in numerous ways, including anticompetitive conduct, improper communication with third-parties with prospective contracts with Plaintiff.

98.     Based upon Plaintiff's past business, there is a reasonable certainty that, absent the Individual Defendants' intentional misconduct, Plaintiff would have continued in the relationship or realized the expectancy.

26

99.     Individual Defendants' conduct therefore constitutes intentional interference with Plaintiff's prospective business or economic advantage under Virginia common law.

100.    The Individual Defendants' actions were and are without privilege or justification and were engaged in through improper means.

101.    As a consequence of the foregoing, Plaintiff has been and continues to be damaged by the actions of the Individual Defendants,' and Plaintiff seeks damages and injunctive relief against the Individual Defendants.


### Count 5
### Intentional Interference with Contracts
### Terminable at Will under Virginia State Law
### (Individual Defendants)

102.    Plaintiff incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 101.

103.    Plaintiff had developed a successful business based upon a valid contractual relationship, or business expectancy, based upon Plaintiff Dr. Turner's contract with Defendant DentaQuest that has had business relationships or expectancies with a probability of future economic benefit to Plaintiff.

104.    The Individual Defendants had knowledge of Plaintiff's relationship or expectancy and these Individual Defendants, along with individuals at Defendant DMAS, acted in such a way to have Plaintiff's contract with DentaQuest terminated in order to interfere with Plaintiff's contractual rights and expectancy, and to have those contract rights transferred to some of the Individual Defendants.

105.    The Individual Defendants intentionally interfered with Plaintiff's contract in order to induce or cause a breach or termination of the relationship or expectancy of Plaintiff in

27

his contract with DentaQuest. Defendants knew of Plaintiff's contract or expectancy at the time of their interference.

106.    As a direct result of the interference of the Individual Defendants in Plaintiff Dr. Turner's contract with DentaQuest, Dr. Turner was damaged and his relationship or expectancy has been disrupted.

107.    The Individual Defendants interfered with Plaintiff Dr. Turner's contractual rights with DentaQuest through the use of improper methods. These methods included, but were not limited to, entering into a conspiracy to have Plaintiff's contract terminated by providing misinformation about Plaintiff's operations; illegal or independently tortious actions, such as violations of federal and state statutes, regulations, or recognized common-law rules; improper methods, such as fraud, misrepresentation or deceit, duress, undue influence, misuse of inside or confidential information; unethical conduct; and unfair competition.

108.    Individual Defendants' conduct therefore constitutes intentional interference with Plaintiff's contract with DentaQuest under Virginia common law.

109.    The Individual Defendants' actions were and are without privilege or justification and were engaged in through improper means.

110.    As a consequence of the foregoing, Plaintiff has been and continues to be damaged by the actions of the Individual Defendants,' and Plaintiff seeks damages and injunctive relief against the Individual Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Dr. Mark G. Turner, DDS prays for the following relief:

28

1.     That the Court adjudge and decree that the letter of termination "without cause" issued by Defendant DentaQuest at the direction of Defendant DMAS against the Plaintiff on January 30, 2014 be set aside in its entirety as constituting an unlawful restraint of interstate trade and commerce and Plaintiff's ability to freely practice his trade and profession as a doctor of dentistry, in violation of Section 1 of the Sherman Act.

2.     That this Court enjoin Defendants from limiting the scope of dental practice to anyone beyond the limitations provided under Virginia law.

3.     That this Court enjoin Defendants from taking further action, outside of their adjudicatory role, from deterring and preventing dentists from practicing dentistry pursuant to Medicaid programs as permitted by Virginia law.

4.     That this Court enjoin Defendants from conspiracy and agreeing to unlawfully restrain trade and allocate markets in favor of some dentists and against Plaintiff.

5.     That this Court enjoin Defendants from further interference with Plaintiff's contracts, prospective contracts, and prospective business or economic advantage relating to patients and prospective patients, except as provided and required by Virginia law.

6.     That the Defendants be permanently enjoined from interfering with Plaintiff's business and ability to practice his profession in accordance with applicable laws and to cease from taking any further steps in furtherance of the anticompetitive conduct alleged in this complaint.

7.     That Plaintiff is entitled to recover:

(a)     Treble the damages determined by this Court to have been sustained by him on account of Defendants' anticompetitive conduct.

(b)     Damages determined by this Court to have been sustained by him on account of

individual Defendants' violation of Virginia state law.

    (c)    Reasonable attorneys' fees and

    (d)    Costs incurred and incidental to prosecuting this action.

    8.    Such further reliefs as may be just and proper in the circumstances.


## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.


Dated: September 9, 2016                    Respectfully submitted,

                                       **DR. MARK G. TURNER, DDS**

                                       /s/ Vincent M. Amberly
                                       Vincent M. Amberly, Esq. (VA 48050)
                                       AMBERLY LAW
                                       129 Harrison Street, NE
                                       Leesburg, VA 20176
                                       Tel: 703-737-3545   Fax: 703-991-0770
                                       Email: vince@amberlylaw.com

                                       *Attorney for Plaintiff*
                                       *Dr. Mark G. Turner, DDS*